**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:25-cv-21389-GAYLES/SHAW-WILDER**

**FORIS DAX, INC.,**

**Plaintiff,**

**v.**

**KAREEM KHAJA,**

**Defendant.**
_________________________________________/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT, STRIKE CERTAIN REQUESTS FOR RELIEF, AND FOR ATTORNEYS' FEES PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(f)**

**THIS CAUSE** is before the Court on the Motion to Dismiss Amended Complaint, Strike Certain Requests for Relief, and for Attorneys' Fees Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) ("Motion") [ECF No. 94],[1] filed by Defendant Kareem Khaja ("Defendant"), proceeding *pro se*.[2] Plaintiff Foris Dax, Inc. ("Foris") opposed Defendant's Motion [ECF No. 115], and Defendant filed a Reply [ECF No. 122]. Upon careful consideration of the parties' filings, the undersigned respectfully recommends that Defendant's Motion be **GRANTED IN PART** and **DENIED IN PART**, as set forth below.

---

[1] This Motion was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge. [ECF No. 91].

[2] The Court notes that Defendant proceeded *pro se* at the time he filed the Motion. However, Defendant is now represented by counsel.

## I. BACKGROUND[3]

This case arises from Defendant's purchase of cryptocurrency from Foris, a virtual currency platform. *See generally* [ECF No. 32]. Foris "provides digital asset services to its customers, including the ability to purchase, sell, store, and send cryptocurrencies, via the Foris Mobile App" (the "App"). [*Id.* ¶ 6]. "The App allows users to connect their Foris accounts to third-party banks . . . to initiate transfers of fiat currencies (held in digital 'Fiat Wallets' made available on the App) in order to facilitate the purchase of cryptocurrencies." [*Id.* ¶ 7]. "The App also allows users to purchase digital assets . . . through the use of a credit card." [*Id.*].

Defendant "created an account with Foris" in November 2021. [*Id.* ¶ 8]. As part of creating an account, Defendant was "require[d] to accept Foris'[s] Terms and Conditions." *See* [*Id.* ¶ 9]. Pursuant to paragraph 15.1 of the Terms and Conditions ("Clause 15.1"), "Defendant agreed to indemnify and hold Foris harmless from 'any first-party or third-party claim or demand (including attorneys' fees . . .) arising out of or related to' Defendant's breach of the Terms and Conditions." [*Id.* ¶ 10 (quoting [ECF No. 32-1 ¶ 15.1])]. "After Defendant created his Foris account, Defendant made multiple transactions" wherein he "agreed to pay for . . . cryptocurrency" at a disclosed price. [*Id.* ¶¶ 14–16]. However, "although Defendant initially provided funds to pay for the cryptocurrency . . ., he subsequently took back the funds . . . and as a result did not pay for th[e] cryptocurrency." [*Id.* ¶ 18]. Consequently, "Defendant obtained a windfall by receiving $75,293.86 worth of cryptocurrency without paying." [*Id.* ¶ 19].

According to Foris, Defendant also "participated in a three-fold fraudulent scheme," wherein Defendant (1) "initiated [bank transfers] to his [Foris account], used Foris'[s] pre-credit

---

[3] The Court accepts the allegations of the Amended Complaint as true for purposes of this Report and Recommendation. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

to purchase cryptocurrency[,] . . . removed that cryptocurrency from his [Foris account], and then . . . removed the queued funds from his banks, causing an insufficient funds error," (2) "used his credit card to purchase cryptocurrency" and then "initiated [credit card] chargebacks . . .[,] fraudulently alleging that the purchases were not legitimate," and (3) "initiated [bank transfers] to his [Foris account], purchased cryptocurrency, removed that cryptocurrency from his [Foris account], and then initiated [ACH] chargeback[s], fraudulently alleging that the [bank] transfers were not legitimate." *See* [*Id.* ¶¶ 21–27]. These actions, Foris asserts, were "only incidental" to the parties' contract. [*Id.* ¶ 22]. The Amended Complaint includes a table detailing the "incoming transfers from [Defendant's] third-party banks to his Foris Fiat Wallet, along with his credit card purchases for cryptocurrency." [*Id.* ¶ 28]; [*Id.* at 5–7]. That table lists the date, time, amount, transaction ID number, and relevant financial institution involved in each transfer.[4] *See* [*Id.* at 5–7]. As a result of this fraudulent scheme, Foris alleges it suffered damages, including "the amount to settle the unauthorized [ACH chargeback] returns ($75,293.86)"; "[lost employee] working hours wasted . . . responding to the credit card chargebacks, ACH insufficient funds error, and ACH chargebacks"; "credit reputation due to the increase in basis points"; and "the market risk in liquidating assets." [*Id.* ¶¶ 27, 32].

On November 6, 2025, Foris filed its Amended Complaint asserting four claims against Defendant: (1) breach of contract (Count I); (2) unjust enrichment (Count II); (3) civil theft under section 772.11, Florida Statutes (Count III); and (4) conversion (Count IV).[5] *See generally* [*Id.*].

---

[4] According to the table, the transfers spanned from April 2022 to June 2022. *See* [ECF No. 32 at 5–7].

[5] Counts II and IV of the Amended Complaint are pled in the alternative to Count I. [*Id.* ¶¶ 39, 70].

The Amended Complaint includes a request for attorneys' fees in Counts I and III. [*Id.* ¶¶ 33, 38, 48]. Defendant subsequently filed the instant Motion. *See* [ECF No. 94].

## II. LEGAL STANDARDS

### A. Motion to Dismiss

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept the plaintiff's allegations as true and "construe them in the light most favorable to the plaintiff." *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "The scope of [a court's] review must be limited to the four corners of the complaint." [6] *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Motion to Strike

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Although a court has broad discretion when reviewing a motion to strike, such motions are considered 'a drastic remedy' and are often 'disfavored by the courts.'" *Delgado v. Carnival Corp.*, 640 F. Supp. 3d

---

[6] The Amended Complaint includes an attached copy of the Terms and Conditions, *see* [ECF No. 32-1], which the Court may consider. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (["[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.").

1286, 1289 (S.D. Fla. 2022) (quoting *Simmons v. Royal Caribbean Cruises, Ltd.*, 423 F. Supp. 3d 1350, 1352 (S.D. Fla. 2019)). "Even when allegations fall into one of the listed descriptions of matter that may be struck, a Rule 12(f) motion should be granted only when the pleading to be stricken has no possible relation to the controversy . . . ." *U.S. ex rel Sedona Partners LLC v. Able Moving & Storage Inc.*, 146 F.4th 1032, 1044 (11th Cir. 2025) (quotation marks omitted); *see also Delgado*, 640 F. Supp. 3d at 1289 ("Motions to strike are generally denied 'unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" (quoting *Simmons*, 423 F. Supp. 3d at 1352)).

**III. DISCUSSION**

Defendant raises numerous arguments[7] across three categories of relief: (1) the dismissal of the Amended Complaint as a whole, and as to each individual count, under Rule 12(b)(6); (2) the striking of Foris's demand for attorneys' fees under Rule 12(f); and (3) an award of attorneys' fees under section 772.11(1), Florida Statutes.[8] *See generally* [ECF No. 94]. The Court first addresses Defendant's Rule 12(b)(6) arguments before turning to his Rule 12(f) motion to strike.

**A. Defendant's Attacks on the Amended Complaint as a Whole Fail**

Defendant seeks dismissal of the Amended Complaint in its entirety on several grounds. *See generally* [*Id.*]. The Court addresses these arguments before turning to Defendant's count-specific arguments.

---

[7] Because Defendant proceeds *pro se*, the Court construes his arguments liberally in reviewing the Motion. *United States v. Joseph*, No. 22-12238, 2023 WL 2926285, at *1 (11th Cir. Apr. 13, 2023) ("We . . . read liberally briefs filed by *pro se* litigants.").

[8] Defendant voluntarily "withdraws his . . . request for attorneys' fees under [s]ection 772.11(1) as premature" in his Reply. [ECF No. 122 at 8]. As such, the Court does not address this argument. *See Usai v. Club Mgmt. Mia. II, LLC*, 801 F. Supp. 3d 1295, 1311 n.6 (S.D. Fla. 2025) (declining to address argument defendants voluntarily withdrew in their reply brief).

**i. Foris Has Standing.**

Defendant asserts that "[Foris]'s injury, if any, was caused by the banks' reversal decisions not by Defendant." [*Id.* at 3]. The Court construes this as an attack on Foris's standing. *See United States v. Joseph*, No. 22-12238, 2023 WL 2926285, at *1 (11th Cir. Apr. 13, 2023) ("We . . . read liberally briefs filed by *pro se* litigants.").

Article III of the U.S. Constitution "restricts the jurisdiction of the federal courts to litigants who have standing to sue." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (quotation omitted). To satisfy Article III standing at the pleading stage, a plaintiff must allege facts demonstrating that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) ("[S]tanding contains three elements: injury in fact, causation, and redressability." (quotation omitted)). The element in dispute here is causation.

Here, the Amended Complaint clearly alleges facts, accepted as true, that demonstrate causation on behalf of Defendant. *See, e.g.*, [ECF No. 32 ¶ 18 ("Defendant . . . took back the funds . . . and as a result did not pay . . . .")]; [*Id.* ¶ 26 ("Defendant . . . [fraudulently] initiated chargebacks . . . .")]. Defendant's argument ignores these allegations and raises a dispute of fact that is not appropriate for resolution at the motion to dismiss stage. *See Page v. Postmaster Gen. & Chief Exec. Off. of U.S. Postal Serv.*, 493 F. App'x 994, 998 (11th Cir. 2012) ("[A] district court is not allowed to resolve disputes of fact in adjudicating a motion to dismiss . . . ."); *see also*

*Twombly*, 550 U.S. at 555 ("[On a motion to dismiss,] all the allegations in the complaint are [assumed] true (even if doubtful in fact) . . . ."). Accordingly, Foris has standing.[9]

**ii. Defendant's arguments regarding Foris's litigation history impermissibly rely on material outside the Amended Complaint.**

Defendant contends that the Amended Complaint should be dismissed because it "is a mass-produced template" that fails *Iqbal* and *Twombly*, and because Foris has been unmeritorious in unrelated litigation. *See* [ECF No. 94 at 8–9]. In support of both arguments, Defendant cites his own declarations and two supplemental authorities he previously filed regarding Foris's purported litigation history in unrelated cases. *See* [*Id.*]. These materials, according to Defendant, demonstrate that the Amended Complaint is materially "identical to [ninety-one] other [ complaints filed by Foris], . . . does not allege a single fact specific to . . . Defendant beyond his name and dollar amount, and . . . contains copy-paste pronoun errors." *See* [*Id.* at 8]. They also supposedly show that there have been "zero trials . . ., [a] 79.3% voluntary dismissal rate, [a] 2.8% collection rate, and the abandonment of a $635,140.50 judgment before trial" across the ninety-one cases. *See* [*Id.* at 9].

The Court, however, cannot consider these materials on a motion to dismiss because its review is "limited to the four corners of the complaint." *See St. George*, 285 F.3d at 1337; *Theodore v. Expoships, LLLP*, No. 25-cv-60326, 2025 WL 1311268, at *2 (S.D. Fla. May 6, 2025) (declining to consider movant's declaration on a motion to dismiss); *see also United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (explaining that although a "court may take judicial notice of a

---

[9] Although Defendant challenges only the causation requirement, the Amended Complaint also satisfies the injury in fact and redressability requirements: Foris suffered an injury (*i.e.*, the loss of the value of cryptocurrency, [ECF No. 32 ¶¶ 19, 31–32, 38]) that is redressable through the award of monetary damages Foris seeks, [*Id.* at 9–10, 13, 14]. *See AT&T Mobility, LLC v. NASCAR, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007) (explaining that courts "are obliged to consider standing [issues] *sua sponte* even if the parties have not raised the issue[s]").

document filed in another court," it may not do so "for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings" (citation omitted)). Stripped of these materials, Defendant presents no argument for challenging the plausibility of the Amended Complaint under *Iqbal* or *Twombly*. *See* [ECF No. 94 at 8–9]. Accordingly, the Court rejects these arguments because Defendant relies on impermissible materials outside the Amended Complaint. *See St. George*, 285 F.3d at 1337; *Theodore*, 2025 WL 1311268, at *2.

**B. Count I – Breach of Contract**

Count I of the Amended Complaint raises a breach of contract claim. [ECF No. 32 ¶¶ 34–38]. Defendant puts forth several grounds to dismiss Count I: (1) 15 U.S.C. § 1693l of the Electronic Fund Transfer Act ("EFTA") voids Foris's enforcement of the Terms and Conditions, *see* [ECF No. 94 at 13–14]; (2) Foris fails to allege non-payment, [*Id.* at 14–15]; (3) Foris's remedy was limited to the "NACHA dispute process,"[10] [*Id.* at 15]; (4) Foris breached its own duty of care and assumed the risk by releasing the cryptocurrency to Defendant before payment cleared, [*Id.*]; and (5) Foris cannot selectively enforce provisions of the Terms and Conditions, [*Id.* at 16–17].[11] The Court addresses each argument in turn.

---

[10] The Court construes Defendant's reference to "NACHA" as alluding to the National Automated Clearing House Association ("NACHA").

[11] Defendant asserts two additional arguments against Count I. First, that the independent tort doctrine prevents Foris from pleading breach of contract in Count I and its tort claims in Counts III and IV. [ECF No. 94 at 16]. The Court addresses this argument in its discussion of Counts III and IV. Second, in his Notice of Supplemental Authority ("Notice") [ECF No. 108], Defendant contends that Foris's claim is barred by the Terms and Conditions' limitations clause, which requires claims arising out of the contract to be brought within one year. *See* [*Id.* at 2 (citing ECF No. 32-1 ¶ 16.9)]. Defendant's Notice fails to comply with the Local Rules because it exceeds the permitted word limit. *See* [*Id.*]. *See* S.D. Fla. L.R. 7.8 (setting word limit for notices of supplemental authority at 200 words). Moreover, considering this argument is derived from the alleged contract's own text, it also fails to comply with Local Rule 7.8 because it is not based on a "pertinent and significant authorit[y]" that came to Defendant's attention after filing the Motion. *See id.* Nonetheless, Florida law voids contractual provisions that shorten the applicable statute of

**i. Count I is not barred by 15 U.S.C. § 1693l.**

Defendant first contends that Count I fails because the sole contractual mechanism through which Foris seeks to recover (*i.e.*, Clause 15.1) is void under 15 U.S.C. § 1693l since it waives his rights under 15 U.S.C. § 1693f. *See* [*Id.* at 13–14]; [ECF No. 122 at 7–8]. The Court disagrees.

Section 1693l provides that "[n]o writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l. Relatedly, section 1693f permits consumers to notify financial institutions of account errors. *See id.* § 1693f(a). An "error" under section 1693f consists of one of seven enumerated categories, including "an unauthorized electronic fund transfer" and "an incorrect electronic fund transfer from or to the consumer's account." *See id.* § 1693f(f). Defendant argues that Clause 15.1 violates section 1693l because, according to Defendant, Clause 15.1 "obligates the consumer to indemnify Foris for losses arising from chargebacks and ACH reversals," thereby effectively waiving his consumer rights under section 1693f. *See* [ECF No. 122 at 7]; *see also* [ECF No. 94 at 14].

Even assuming, without deciding, that the EFTA applies to the relevant transactions in this case, Defendant's argument fails because Count I does not seek damages under Clause 15.1. *See* [ECF No. 32 ¶¶ 34–38]. Rather, Count I cites Clause 15.1 merely as a basis for recovering attorneys' fees and costs. [*Id.* ¶ 38]. In any event, Defendant's alleged conduct is not protected under section 1693f. Count I states that Defendant "took back the funds [he] used to pay for the cryptocurrency, and as a result did not pay for th[e] cryptocurrency." [*Id.* ¶ 18]. This conduct (*i.e.*, the failure to pay a contractual debt), accepted as true, does not fall within any of section 1693f's

---

limitations for bringing an action arising from the contract. *See* Fla. Stat. § 95.03. Foris's claim, accordingly, is not barred by the Terms and Conditions. *See* Fla. Stat. § 95.11(2)(b) (setting the statute of limitations for a breach of a written contract at five years).

enumerated categories constituting an "error." *See* 15 U.S.C. § 1693f(f). Defendant's alleged actions, consequently, cannot constitute the reporting of an "error" under section 1693f(a), *see id.* § 1693f(a), and thus section 1693f(a) affords Defendant no protection based on the Amended Complaint's facts.[12] Therefore, even if Clause 15.1 was the basis for Foris's damages under Count I, the contract's enforcement would not be barred by section 1693l because Defendant's conduct was not protected.[13] *See id.* § 1693l.

**ii. Foris adequately alleges non-payment.**

Defendant next asserts that Count I fails to allege non-payment of the contract because "[t]he bank[s] -- not [Defendant] -- reversed the funds." *See* [ECF No. 94 at 14–15]. The Court disagrees.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). "A 'material breach' is one that goes 'to the essence of the contract' . . . ." *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014) (quoting *Covelli Fam., L.P. v. ABG5, LLC*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008)).

---

[12] In a separate section of the Motion, Defendant argues that the "fraud claims" similarly fail because he was exercising his consumer dispute rights under the EFTA. *See* [ECF No. 94 at 2–3, 5]. For the same reasons stated here, however, Defendant's alleged fraudulent reporting of consumer disputes to initiate payment reversals, *see* [ECF No. 32 ¶¶ 21–27], which the Court accepts as true, is not protected under 15 U.S.C. § 1693f(a). *See* 15 U.S.C. § 1693f(a).

[13] Relatedly, Defendant contends that 15 U.S.C. § 1693g caps his liability under Count I. [ECF No. 94 at 14]. However, section 1693g is inapplicable here. Section 1693g protects consumers by limiting their liability to financial institutions for unauthorized electronic transfers, such as those resulting from a consumer's compromised bank account or stolen debit card. *See* 15 U.S.C. § 1693g; *see generally Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579 (9th Cir. 2021) (applying section 1693g). The statute does not limit a consumer's liability for the consumer's commission of fraud or intentional failure to pay. *See* 15 U.S.C. § 1693g.

Here, Count I alleges non-payment (*i.e.*, a material breach) because Foris asserts that Defendant "took back the funds [he] used to pay for the cryptocurrency, and as a result did not pay for th[e] cryptocurrency." [ECF No. 32 ¶ 18]. As explained in the Court's standing analysis above, Defendant's assertion that "[t]he bank[s] -- not [Defendant] -- reversed the funds," [ECF No. 94 at 15], ignores the Amended Complaint's allegations and implicates a factual dispute that cannot appropriately be resolved at the motion to dismiss stage. *See Page*, 493 F. App'x at 998; *see also Twombly*, 550 U.S. at 555. Accordingly, Foris "sufficiently alleges breach, and the Court will not look outside the Amended Complaint at additional facts offered in Defendant's Motion." *Schuler v. Ercole USA, LLC*, No. 23-CV-60127, 2023 WL 3434922, at *2 (S.D. Fla. May 12, 2023).

**iii. Defendant fails to cite relevant legal authority supporting his remaining arguments against Count I.**

Defendant asserts three other arguments against Count I without citing relevant legal authority in support. On a Rule 12(b)(6) motion to dismiss, "[t]he movant must support its arguments for dismissal with citations to legal authority." *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (citing S.D. Fla. L.R. 7.1(a)(1)). Although Defendant proceeds *pro se*, "[a] *pro se* defendant who requests that the [c]ourt dismiss a plaintiff's complaint must adhere to the same standards as all litigants who appear before th[e c]ourt." *Schwartz v. Four Residential, Inc.*, No. 16-cv-80423, 2016 WL 10952496, at *2 (S.D. Fla. May 11, 2016). "A party's failure to cite legal authority in support of its position 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'" *Goldberg for Jay Peak, Inc. v. Raymond James Fin., Inc.*, No. 16-21831-CIV, 2017 WL 7791564, at *7 (S.D. Fla. Mar. 27, 2017) (quoting *Rapid Transit Lines, Inc. v. Wichita Devs., Inc.*, 435 F.2d 850, 852 (10th Cir. 1970)). The Court addresses each of Defendant's unsupported arguments against Count I below.

First, Defendant maintains that Count I fails because "[Foris]'s remedy, if any, was to contest the reversals through the NACHA dispute process."[14] [ECF No. 94 at 15]. However, "Defendant[] cite[s] no legal authority supporting . . . [this] argument[], which is grounds itself for rejecting the argument." *Alonso Cano v. 245 C & C, LLC*, No. 19-21826-CIV, 2019 WL 11769102, at *9 (S.D. Fla. Nov. 25, 2019) (quotation omitted). *See* [ECF No. 94 at 15]. The Court, accordingly, declines to consider this argument. *See Schwartz*, 2016 WL 10952496, at *2 (denying *pro se* defendant's motion to dismiss for failure to support his argument with "citations to legal authority as required by the local rules" (quotation omitted)); *imoderni LLC v. Villacara*, No. 14-23539-CIV, 2014 WL 12600499, at *1 (S.D. Fla. Dec. 19, 2014) (denying *pro se* defendant's motion, in part, because of his failure to "cite any legal authority in support of" the motion); *see also Alonso Cano*, 2019 WL 11769102, at *9–10 (rejecting unsupported arguments and collecting cases).

Second, Defendant asserts that Count I fails because Foris's "decision to release [the] crypto[currency] before payment cleared constitutes either a breach of its own duty of care or a voluntary assumption of risk," thereby barring Foris's ability to recover under the contract. [ECF No. 94 at 15]. Defendant again provides no legal authority supporting these arguments. *See* [*Id.*]. The Court, consequently, "declines th[is] invitation [to do Defendant's research] and rejects the[se] argument[s] for failure to cite supporting authority." *See Goldberg for Jay Peak*, 2017 WL 7791564, at *7; *see also Schwartz*, 2016 WL 10952496, at *2; *imoderni*, 2014 WL 12600499, at *1; *Alonso Cano*, 2019 WL 11769102, at *9–10.

---

[14] Defendant raises this argument in multiple places throughout the Motion, each time without a supporting legal citation or reference to a specific NACHA rule. *See* [ECF No. 94 at 4, 14].

Third, Defendant argues that Count I fails because Foris cannot selectively enforce the Terms and Conditions. [ECF No. 94 at 16–17]. Defendant points to separate litigation wherein, according to Defendant, Foris invoked arbitration against different parties under the same Terms and Conditions at issue here. [*Id.* at 16]; [ECF No. 108 at 1–2]. Citing *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), and *Raymond James Financial Services, Inc. v. Saldukas*, 896 So. 2d 707 (Fla. 2005), Defendant contends that Foris cannot compel arbitration in one case while ignoring the same arbitration clause in another. *See* [ECF No. 94 at 16–17]; [ECF No. 108 at 2].

Defendant's reliance on *Morgan* and *Saldukas* is inapposite. Both *Morgan* and *Saldukas* addressed the issue of waiver of the right to arbitrate where a party has acted inconsistently with that right within the same dispute. *See Morgan*, 596 U.S. at 416, 419 (holding that proof of "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA"); *Saldukas*, 896 So. 2d at 708–711 (holding that there is "no requirement for proof of prejudice in order for there to be an effective waiver of the right to arbitrate"). Neither case supports Defendant's apparent proposition that a party's invocation of its right to arbitration in one contract prevents that party from litigating a dispute against a different party based on a separate contract. *See Morgan*, 596 U.S. at 413–19; *Saldukas*, 896 So. 2d at 708–11. As such, because Defendant has once again failed to provide legal authority supporting his proposition, the Court rejects this argument. *See Schwartz*, 2016 WL 10952496, at *2; *imoderni*, 2014 WL 12600499, at *1; *see also Alonso Cano*, 2019 WL 11769102, at *9–10.

Therefore, for the reasons stated above, Defendant's Motion should be denied as to Count I of the Amended Complaint.

### C. Count II – Unjust Enrichment

Count II of the Amended Complaint raises an unjust enrichment claim in the alternative to the breach of contract claim in Count I. [ECF No. 32 ¶¶ 39–47]. Defendant argues that Count II should be dismissed on three grounds: (1) Foris cannot plead an unjust enrichment because an express contract exists on the same subject matter; (2) Foris does not allege that no adequate remedy exists at law; and (3) Foris fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for claims based in fraud. *See* [ECF No. 94 at 11–12].[15] The Court addresses each argument below.

#### i. Count II adequately alleges a claim for unjust enrichment in the alternative to Count I.

Defendant asserts Count II's unjust enrichment claim fails because Foris alleges an express contract exists on the same subject matter in Count I. [*Id.*]. Defendant also maintains that Count II fails because Foris does not state that no adequate remedy at law exists. [*Id.* at 12]. The Court disagrees.

"Under Florida law, a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Samana Inc. v. Lucena*, 156 F. Supp. 3d 1373, 1374 (S.D. Fla. 2016) (quotation omitted); *see also Diamond "S" Dev. Corp v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a

[15] Defendant separately argues that Count II is barred by the independent tort doctrine. *See* [ECF No. 94 at 9, 17]. However, "[t]he independent tort doctrine bars recovery in tort for actions that challenge a breach of contract." *Perez v. Scottsdale Ins. Co.*, No. 19-cv-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020). Here, Foris's unjust enrichment claim is not a tort. *See F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48–49 (Fla. 4th DCA 2021) (explaining unjust enrichment is "a contract implied in law or a quasi-contract"). The Court, therefore, declines to consider this argument. *See ReneG Corp v. JPMorgan Chase Bank, N.A.*, No. 25-cv-20595, 2025 WL 2239263, at *5 n.3 (S.D. Fla. Aug. 6, 2025) (declining to apply the independent tort doctrine to breach of contract and unjust enrichment claims).

plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.”). “However, until the existence of a contract is proven, a motion to dismiss a claim for . . . unjust enrichment on this basis is premature.” *Donner v. Fla. Bracing Ctr., Inc.*, No. 13-60848-CIV, 2013 WL 3189077, at *2 (S.D. Fla. June 20, 2013) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998)). “Rule 8 of the Federal Rules of Civil Procedure specifically authorizes a plaintiff to plead causes of action in the alternative, and Florida courts have found that a party may plead in the alternative the existence, and breach, of an express contract and an unjust enrichment claim.” *Samana*, 156 F. Supp. 3d at 1374. In doing so, a plaintiff must also “allege that no adequate remedy at law exists within [its] unjust enrichment claim.” *See Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1353, 1367 (S.D. Fla. 2018) (quotation omitted) (adopting report and recommendation); *see Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1327 (S.D. Fla. 2000) (dismissing unjust enrichment claim where plaintiff “failed to allege that an adequate remedy at law does not exist”).

Here, Count II is expressly pled in the alternative to the breach of contract claim in Count I. [ECF No. 32 ¶ 39]. Foris also adequately alleges that it “has no adequate remedy at law” to recover its damages. [*Id.* ¶¶ 46–47]. *See Wilson v. De Angelis*, 156 F. Supp. 2d 1335, 1341 (S.D. Fla. 2001) (finding allegation that “no adequate legal remedy exists to compensate [p]laintiff” was sufficient, in part, to support an unjust enrichment claim). And although Defendant maintains that an “express contract governs the dispute,” *see* [ECF No. 94 at 11], Defendant “denies that he read, understood, or specifically agreed to each individual provision” of the alleged Terms and Conditions in his Amended Answer to Amended Complaint, Affirmative Defenses, Counterclaims, and Demand for Jury Trial. [ECF No. 124 ¶¶ 11, 33]. He also contests the enforceability of the Terms and Conditions. *See* [*Id.* ¶¶ 11, 33, 37]. The Court, therefore, concludes that because the

existence of a valid contract is still in dispute, Foris may plead unjust enrichment in the alternative to Count I at this stage. *See Donner*, 2013 WL 3189077, at *2 (denying motion to dismiss unjust enrichment claim despite defendants' claim, in their motion, that "an express agreement exist[ed]" because defendants denied the existence of an agreement in their answer to the complaint); *see also Samana*, 156 F. Supp. 3d at 1374 ("Because [d]efendants have denied the existence of any express contract between the [p]arties . . . the [c]ourt concludes that [p]laintiff may properly plead a breach of contract claim and, in the alternative, an unjust enrichment claim." (internal citation omitted)); *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) ("[B]ecause [d]efendant denies the existence of an express contract, the [p]laintiff has properly presented the claim for unjust enrichment."); *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020) ("Regardless of whether a contract exists, [defendant] disputes the merits of the breach of contract claim. Even more important, this [c]ourt has consistently held that a plaintiff may allege alternative claims in [its] complaint. Accordingly, [plaintiff]'s unjust enrichment claim may remain for now, in the alternative." (internal citation omitted)).

**ii. Count II satisfies Rule 9(b)'s requirements.**

Defendant contends Count II additionally fails because it does comply with Rule 9(b)'s pleading requirements for a claim sounding in fraud. [ECF No. 94 at 12]. The Court disagrees.

"Under Florida law, a plaintiff stating a claim for unjust enrichment must allege (1) the plaintiff has conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022). A claim for unjust enrichment that "sound[s] in fraud" is "subject to Rule 9(b)'s requirements." *Id.* at 1307 n.11.

"Under Rule 9(b), claims of fraud must be ple[d] with particularity, which means identifying the who, what, when, where, and how of the fraud alleged." *Id.* at 1307; *see Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) ("Pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled [the plaintiff]; and (4) what the defendants gained by the alleged fraud." (alteration adopted and quotation omitted)). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quotation omitted). However, "[t]hough Rule 9(b) requires more particularity than the normal Rule 8(a) standard, its application must not abrogate the concept of notice pleading." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025) (quotation marks omitted).

Here, Count II alleges that "Defendant participated in a three-fold fraudulent scheme," wherein Defendant (1) "initiated [bank transfers] to his [Foris account], used Foris'[s] pre-credit to purchase cryptocurrency[,] . . . removed that cryptocurrency from his [Foris account], and then . . . removed the queued funds from his banks, causing an insufficient funds error," (2) "used his credit card to purchase cryptocurrency" and then "initiated [credit card] chargebacks . . .[,] fraudulently alleging that the purchases were not legitimate," and (3) "initiated [bank transfers] to his [Foris account], purchased cryptocurrency, removed that cryptocurrency from his [Foris account], and then initiated [ACH] chargeback[s], fraudulently alleging that the [bank] transfers were not legitimate." *See* [ECF No. 32 ¶¶ 21–27, 40]. Foris includes a table detailing the "incoming transfers from [Defendant's] third-party banks to his Foris Fiat Wallet,

along with his credit card purchases for cryptocurrency." [*Id.* ¶¶ 28, 40]; [*Id.* at 5–7]. That table lists the date, time, amount, transaction ID number, and relevant financial institution involved in each transfer. *See* [*Id.* at 5–7]. Finally, Count II also alleges that "[a]s a result of Defendant's fraudulent scheme and attempt to game the system, Defendant obtained a windfall by receiving $75,293.86 worth of Digital Assets [*i.e.*, cryptocurrency] without paying for them." *See* [*Id.* ¶¶ 29, 31, 40]. The Court, accordingly, is satisfied that Count II sufficiently pleads unjust enrichment with the particularity required under Rule 9(b), as it "identif[ies] the who, what, when, where, and how of the fraud alleged," *see Omnipol*, 32 F.4th at 1307, thereby alerting Defendant "to the precise misconduct with which [he is] charged," *see Durham*, 847 F.2d at 1511 (quotation omitted).

Therefore, Defendant's Motion should be denied as to Count II.

**D. Counts III and IV – Civil Theft and Conversion**

Counts III and IV of the Amended Complaint allege Defendant committed the torts of civil theft under section 772.11, Florida Statutes, and conversion, respectively. [ECF No. 32 ¶¶ 48–77]. The Court first addresses whether these claims are barred by Florida's independent tort doctrine. Because the Court finds that Count III should be barred by the independent tort doctrine as currently pled, it then proceeds to its analysis of Count IV.[16]

---

[16] Because this Court recommends dismissal of Count III, it is unnecessary for the Court to decide any of Defendant's additional arguments for dismissal of Count III, including whether Foris sufficiently alleges "felonious intent" to state a claim for civil theft or whether Foris failed to strictly comply with section 772.11, Florida Statutes' pre-suit demand requirement. [ECF No. 94 at 6–8, 15–16]. Similarly, the Court need not and does not address whether Foris's demand for attorneys' fees under section 772.11 should be stricken. *See* [*Id.* at 17–18]. In the event the district judge rejects this Report and Recommendation, this count may be referred back to this Court for consideration.

**i. Count III is barred by the independent tort doctrine.**

Defendant contends Counts III and IV are barred by Florida's independent tort doctrine because they arise from the same conduct and seek the same damages as Foris's breach of contract claim in Count I. [ECF No. 94 at 9–10, 17].

"Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353 (S.D. Fla. 2021) (quotation omitted); *see also Perez v. Scottsdale Ins. Co.*, No. 19-cv-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) (Gayles, J.) ("The independent tort doctrine bars recovery in tort for actions that challenge a breach of contract so as to prevent plaintiffs from recovering duplicative damages for the same wrongdoing." (quotation omitted)). "However, the independent tort doctrine does not bar claims where the plaintiff has alleged conduct that is independent from acts that breached the contract and does not itself constitute breach of the contract at issue." *Matonis v. Care Holdings Grp., LLC*, 423 F. Supp. 3d 1304, 1311 (S.D. Fla. 2019). "In short, the independent tort doctrine requires a plaintiff to plead a tortious action committed separate and apart from the breach of contract." *Med-Stop, Inc. v. Vandutch, Inc.*, No. 23-cv-21875, 2025 WL 26731, at *4 (Jan. 3, 2025) (quotation omitted).

Several courts have held that the independent tort doctrine does not apply to tort claims pled in the alternative to a breach of contract claim. *See, e.g.*, *Hind v. FxWinning Ltd.*, No. 23-23139-CIV, 2024 WL 2801521, at *24 (S.D. Fla. May 31, 2024) ("[W]here a party has pleaded a tort claim in the alternative to a breach-of-contract claim, the independent tort doctrine does not apply." (quoting *Floral Logistics of Mia., Inc. v. N.Y. Garden Flower Wholesale, Inc.*, No. 23-20073-CIV, 2023 WL 4295320, at *5 (S.D. Fla. June 30, 2023)); *Nevado v. Off. Depot, LLC*, No. 23-cv-80244, 2023 WL 3778269, at *1 (S.D. Fla. Apr. 21, 2023) (finding the independent tort

doctrine did not apply to breach of contract claim and alternatively pled fraud claim); *Duncan v. Rushmore Loan Mgmt. Servs., LLC*, No. 6:20-cv-1524, 2021 WL 8774248, at *12 (M.D. Fla. Sep. 30, 2021) ("The [c]ourt need not decide at this stage whether the independent tort doctrine applies here because the Federal Rules of Civil Procedure permit alternative pleading." (quotation omitted)). The Court is persuaded by this line of authority. Accordingly, because Foris pleads Count IV in the alternative to Count I, [ECF No. 32 ¶ 70], the independent tort doctrine does not apply to Count IV. *See Hind*, 2024 WL 2801521, at *24; *Floral Logistics*, 2023 WL 4295320, at *5; *Nevado*, 2023 WL 3778269, at *1; *Duncan*, 2021 WL 8774248, at *12. Count III, however, is not pled in the alternative to Count I. *See* [ECF No. 32 ¶¶ 48–69]. The Court, therefore, will consider Defendant's argument as to Count III. As explained below, the Court finds that Count III should be barred by the independent tort doctrine.

Similar to Count II, Count III alleges that "Defendant participated in a three-fold fraudulent scheme," wherein Defendant (1) "initiated [bank transfers] to his [Foris account], used Foris'[s] pre-credit to purchase cryptocurrency[,] . . . removed that cryptocurrency from his [Foris account], and then . . . removed the queued funds from his banks, causing an insufficient funds error," (2) "used his credit card to purchase cryptocurrency" and then "initiated [credit card] chargebacks . . .[,] fraudulently alleging that the purchases were not legitimate," and (3) "initiated [bank transfers] to his [Foris account], purchased cryptocurrency, removed that cryptocurrency from his [Foris account], and then initiated [ACH] chargeback[s], fraudulently alleging that the [bank] transfers were not legitimate." *See* [ECF No. 32 ¶¶ 21–27, 48]. In doing this, Defendant "acted with felonious intent" and "obtained a windfall by receiving $75,293.86 worth of Digital Assets [*i.e.*, cryptocurrency] without paying for them." *See* [*Id.* ¶¶ 29, 31, 48, 58]. Foris was

resultingly "unable to recover the . . . funds that Defendant had . . . used to purchase [the] Digital Assets." [*Id.* ¶ 63].

Looking closely at these allegations, the Court is convinced that Count III is "inextricably tied to [Foris's] breach of contract claim." *See Kanen v. BBQ Holdings, Inc.*, No. 23-cv-62173, 2024 WL 5508197, *15 (S.D. Fla. Nov. 8, 2024); *see also Med-Stop*, 2025 WL 26731, at *6 ("[B]ecause the [d]efendants' alleged fraud is inextricably intertwined with the [d]efendants' performance on the [c]ontract, the independent tort doctrine applies."). At its core, Count III alleges that Defendant purchased $75,293.86 worth of cryptocurrency from Foris, obtained that cryptocurrency, and then wrongfully took affirmative acts to prevent his payment from going through. *See* [ECF No. 32 ¶¶ 21–27, 29, 31, 48, 58, 63]. This is merely a re-alleged version of Count I, which states that "although Defendant initially provided funds to pay for the cryptocurrency in the amount of $75,293.86, he subsequently took back the funds . . ., and as a result did not pay for th[e] cryptocurrency." [*Id.* ¶ 18]. And although Count III conclusorily alleges that "Defendant fraudulently induced Foris to enter into the contract," [*Id.* ¶ 64], Foris identifies no fraud that is separate from Defendant's obligation to pay under the contract. *See* [*Id.* ¶¶ 48–69]. *See Steel Media Grp., LLC v. Lewis*, No. 1:22-CV-21780, 2023 WL 1413043, at *5 (S.D. Fla. Jan. 6, 2023) ("[A] plaintiff cannot avoid dismissal under the independent tort doctrine merely by labeling a breach of contract claim as 'fraud in the inducement.' Rather, the alleged fraud must be based on conduct separate from the performance of the contract." (quoting *Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000) (citation omitted)), *report and recommendation adopted*, 2023 WL 1332832, at *1 (S.D. Fla. Jan. 31, 2023). Thus, because the civil theft tort alleged in Count III "arises out of the breach of contract" alleged in Count I, it cannot proceed. *See Kanen*, 2024 WL 5508197, at *12.

Therefore, the Motion should be granted as to Count III, and Count III should be dismissed without prejudice because it is barred by the independent tort doctrine as currently pled. The undersigned recommends allowing Foris to replead the claim in the alternative to Count I if it so desires. *See Nevado v. Off. Depot, LLC*, No. 23-CV-80244, 2023 WL 2809521, at *2 (S.D. Fla. Apr. 6, 2023) (permitting plaintiffs to replead fraud claim in the alternative to breach of contract claim because, "[i]f the [p]laintiffs did so, the independent tort doctrine would appear to no longer bar" the claim).

**ii. Count IV adequately pleads a claim for conversion under Florida law.**

Defendant next argues that Count IV fails because Foris's claim arises from a mere failure to pay money. [ECF No. 94 at 10]. "Conversion is 'the exercise of wrongful dominion or control over property to the detriment of the rights of the actual owner.'" *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998) (quoting *Seymour v. Adams*, 638 So. 2d 1044, 1046–47 (Fla. 5th DCA 1994)). "Under Florida law, 'to state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property.'" *Fitzgerald v. Defendant 1*, No. 24-21925-CV, 2026 WL 575168, at *5 (S.D. Fla. Mar. 2, 2026) (quoting *Batista v. Rodriguez*, 388 So. 3d 1098, 1101 (Fla. 3d DCA 2024)).

Here, Count IV, pled in the alternative to Count I, alleges that through the "three-fold fraudulent scheme" described above, "Defendant knowingly obtained and retained" cryptocurrency owned by Foris and irreversibly transferred that cryptocurrency off Foris's platform. [ECF No. 32 ¶¶ 21, 29–30, 70–72]. Foris also alleges it suffered damages as a result. [*Id.* ¶¶ 32, 71, 77]. These facts, accepted as true and construed in Foris's favor, *see Pielage*, 516 F.3d at 1284, are sufficient to adequately plead conversion under Florida law, *see Fitzgerald*, 2026 WL

575168, at *5 (finding conversion claim for cryptocurrency adequately pled where complaint alleged that "[p]laintiff owned [cryptocurrency] and that [d]efendant deceived [p]laintiff by unlawfully transferring [p]laintiff's cryptocurrency from his crypto.com account to a purportedly fraudulent trading exchange" and that plaintiff suffered damages); *see also Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1352 (S.D. Fla. 2019) (granting summary judgment on conversion claim for cryptocurrency where "[p]laintiffs transferred cryptocurrency to [defendant] for investment and [defendant] did not return their money when the IPO failed to launch").

Therefore, the Motion should be denied as to Count IV.

**E. Defendant's Motion to Strike Foris's Request for Attorneys' Fees is Premature**

Having considered Defendant's arguments under Rule 12(b)(6), the Court turns to Defendant's motion to strike under Rule 12(f). Defendant contends that Foris's demand for attorneys' fees should be stricken because "the Amended Complaint identifies no independent contractual or statutory basis for an award of attorneys' fees against Defendant beyond the indemnification clause voided by [the] EFTA." [ECF No. 94 at 17–18].

"[U]nder Florida law, 'attorney[s'] fees may . . . be awarded by a court pursuant to an entitling statute or an agreement of the parties.'" *RJ's Int'l Trading, LLC v. Crown Castle S., LLC*, 98 F.4th 1330, 1335 (11th Cir. 2024) (quoting *Dade Cnty. v. Pena*, 664 So. 2d 959, 960 (Fla. 1995)). "If attorney[s'] fees [are] available to [a p]laintiff on a statutory or contractual basis, then deferral [of a motion to strike the attorneys' fees is] appropriate." *See Saravia v. Hunter*, No. 23-60469-CIV, 2023 WL 5105343, at *3 (S.D. Fla. July 13, 2023), *report and recommendation adopted*, 2023 WL 5096709, at *1 (S.D. Fla. Aug. 9, 2023); *see also Persivia, Inc. v. Sanitas USA, Inc.*, No. 25-cv-22423, 2025 WL 3628138, at *3 (S.D. Fla. Dec. 15, 2025) (denying motion to strike attorneys' fees as premature where "[p]laintiff's claim for attorneys' fees [was] grounded in a

contractual basis and [was] not a redundant, immaterial, impertinent, or scandalous matter under Rule 12(f)"); *Erin Taylor Editions v. Antar*, No. 17-21013-CIV, 2019 WL 2106192, at *9 (S.D. Fla. Mar. 29, 2019) ("The [c]ourt finds that [c]ounter-[d]efendants' motion to strike the claims for attorney's fees is premature until the relevant contract, to the extent it exists, can be properly interpreted following further factual development." (footnote omitted)).

Here, the Court does not find that Foris's claims for attorneys' fees warrant the drastic remedy of striking. *See Sedona Partners LLC*, 146 F.4th at 1044–45 ("Rule 12(f) is a drastic remedy to be resorted to only when required for the purposes of justice." (quotation omitted)). Foris has identified a contractual basis for attorneys' fees under Clause 15.1, [ECF No. 32 ¶ 38], the enforcement of which, as explained above, is not void under the EFTA based on the Amended Complaint's facts. As such, Foris's contractual claim for attorneys' fees is not a "redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). Defendant's Motion, consequently, should be denied as to its request to strike Foris's demand for attorneys' fees under Count I because such request is premature at this stage. *See Persivia*, 2025 WL 3628138, at *3; *Erin Taylor Editions*, 2019 WL 2106192, at *9–10.

### F. Defendant's Misrepresentation of Case Law Violates His Duty of Candor and Is Sanctionable

The Court must regrettably note one more thing. As Foris correctly identifies, Defendant's Motion "misrepresents authority." [ECF No. 115 at 2 n.1]. By the Court's count, Defendant falsely attributes language to three cases and cites others for propositions those cases do not support. *See, e.g.*, [ECF No. 94 at 6–8]. For instance, Defendant quotes *Rosen v. Marlin*, 486 So. 2d 623 (Fla. 3d DCA 1986) for the proposition: "'[A] good faith belief that the party was entitled to the property' negates the criminal intent required for civil theft." [ECF No. 94 at 7]. That quoted language does not appear in *Rosen*. As another example, Defendant quotes *Ginsberg v. Lennar Fla.*

*Holdings, Inc.*, 645 So. 2d 490 (Fla. 3d DCA 1994) for the proposition: "Florida courts have . . . 'repeatedly warned that civil theft is not established by a mere failure to pay monies contractually due.'" [ECF No. 94 at 8]. *Ginsberg* does not include that quoted language.

The Court recognizes that Defendant is proceeding *pro se*. "Certainly, documents filed *pro se* must be 'liberally construed' and evaluated with 'less stringent standards than formal pleadings drafted by lawyers.'" *United States v. Stephens*, No. 23-CIV-80043, 2025 WL 2840746, at *3 (S.D. Fla. Aug. 7, 2025) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (alterations adopted)). "But a liberal standard is not the same as no standards—*pro se* litigants are nonetheless required to 'conform to procedural rules.'" *Id.* (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002)). Defendant's *pro se* status does not excuse him from the "same duty of candor to the [C]ourt as imposed on any other litigant." *Kendrick v. Sec'y, Fla. Dep't of Corr.*, No. 21-12686, 2022 WL 2388425, at *3 (11th Cir. July 1, 2022). The misrepresentation of case law is undoubtedly a violation of this duty and is sanctionable. *See Hood v. Tompkins*, 197 F. App'x 818, 819 (11th Cir. 2006) ("A district court may impose sanctions if a party knowingly files a pleading [that] contain[s] false contentions." (citing Fed. R. Civ. P. 11(c))).

As far as the undersigned can determine, this is the first time that the Court has advised Defendant of his sanctionable conduct. The Court gives Defendant the benefit of the doubt that, as a *pro se* litigant, he may have been unaware that the case quotations did not exist. That said, Defendant must ensure that all case quotations and citations are accurate going forward. Defendant is warned that failure to comply with this instruction may result in sanctions. *See, e.g.*, *Stephens*, 2025 WL 2840746, at *3–5 (sanctioning a *pro se* litigant for citing nonexistent authority); *O'Brien v. Flick*, No. 24-61529-CIV, 2025 WL 242924, at *7 (S.D. Fla. Jan. 10, 2025) (same).

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's Motion [ECF No. 94] be **GRANTED IN PART** and **DENIED IN PART** in accordance with the terms of this Report and Recommendation. Specifically, the undersigned recommends that the Motion as to Counts I, II, and IV, as well as Defendant's motion to strike, be **DENIED**, and that the Motion as to Count III be **GRANTED**.

## V. OBJECTIONS

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1). Any response shall be filed within **seven (7) days** of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1; *see Thomas v. Arn*, 474 U.S. 140 (1985).

**RESPECTFULLY SUBMITTED** in Chambers in Fort Lauderdale, Florida, on this 26th day of October 2026.

**DETRA SHAW-WILDER**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record